IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EZRA PENDLETON, | : |
| Petitioner, | : |
| v. | : Civ. Act. No. 12-524-LPS |
| DAVID PIERCE, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents. | : |

Ezra Pendleton. *Pro se* Petitioner.

Karen V. Sullivan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**

August 20, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Ezra Pendleton ("Petitioner"). (D.I. 1; D.I. 5; D.I. 8) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

As set forth by the Delaware Supreme Court in Petitioner's direct appeal, the facts leading to Petitioner's arrest and conviction are as follows:

> On October 7, 2008, Probation Officer Kevin McClure and other members of the Governor's Task Force convened near Milford, Delaware for a GTF operation. When the activities failed to produce the desired results, McClure decided to conduct curfew checks instead. Using the Department of Corrections automated computer system, McClure searched for probationers in the Milford area. After finding [Petitioner's] name in the DACS system, McClure noted three items of information that he believed to be relevant: (1) [Petitioner] tested positive for marijuana and cocaine on four previous occasions; (2) [Petitioner] was a career criminal; and (3) [Petitioner] missed a curfew on or about the 21st of August.
>
> Believing [Petitioner's] positive drug screenings to be indicative of consistent drug use, McClure phoned his supervisor, Perry Allfather, seeking approval for an administrative search of [Petitioner's] home. Neither McClure nor Allfather prepared a pre-search checklist; instead, they orally analyzed the information McClure had gathered.
>
> Despite the absence of a completed, physical copy of the checklist, Allfather approved the "administrative" search. Upon approval of the search, four GTF members, three probation officers, and one Delaware State Police Officer descended on [Petitioner's] apartment and collected approximately 3.05 grams of crack cocaine on the kitchen counter, in the kitchen's trashcan, in a sandwich box, and on the floor.

*Pendleton v. State*, 990 A.2d 417, 419 (Del. 2010).

Petitioner was arrested for possession with intent to deliver cocaine, possession with intent to deliver clonazepam, maintaining a dwelling, tampering with physical evidence, second degree conspiracy, possession of drug paraphernalia, and possession of marijuana. (D.I. 13 at 1) The State filed an information on the same charges. Petitioner's first counsel ("suppression counsel") filed a

1

suppression motion in January 2009, which the Superior Court granted in part and denied in part. Thereafter, due to a conflict, new counsel ("trial counsel") was appointed to represent Petitioner. Petitioner waived his right to a jury trial and a stipulated facts bench trial was held on April 28, 2009 on the charges of possession with intent to deliver cocaine, maintaining a dwelling, and tampering with physical evidence. *Id.* The State entered a *nolle prosequi* on the remaining charges. (D.I. 13 at 1-2) The trial judge reserved decision and, on April 29, 2009, found Petitioner guilty of possession with intent to deliver cocaine and maintaining a dwelling, and found him not guilty of tampering with physical evidence. (D.I. 13 at 2) Petitioner was sentenced as a habitual offender to fifteen years of incarceration on the possession with intent to deliver conviction, and to probation on the maintaining a dwelling conviction. *Id.* Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence. *See Pendleton*, 990 A.2d at 421.

In December 2010, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Court Rule 61 ("Rule 61 motion"). (D.I. 13 at 2) The Delaware Superior Court denied the Rule 61 motion in April 2011. (D.I. 15-7 at 47) Petitioner argued that he had not been provided an opportunity to respond to his counsels' affidavits prior to the court's ruling. The Superior Court vacated its ruling and gave Petitioner leave to file a response. (D.I. 13 at 2) In August 2011, after reviewing Petitioner's response, the Superior Court denied the Rule 61 motion. (D.I. 15-7 at 50-53) The Delaware Supreme Court affirmed that decision. *See Pendleton v. State*, 2012 WL 172839 (Del. Jan. 19, 2012).

Petitioner timely filed the instant habeas Petition and a subsequent amended Petition (hereinafter referred to as "Petition"). The State filed an Answer asserting that the Court should deny the Petition because the Claims One and Three are meritless, and Claim Two is barred from habeas review.

## II. LEGAL STANDARDS

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is

3

unaccompanied by an opinion explaining the reasons relief has been denied;" as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013).

## III. DISCUSSION

Petitioner asserts three grounds for relief in his Petition: (1) suppression counsel and trial counsel provided ineffective assistance; (2) the evidence used at trial was the result of an illegal administrative search and seizure; and (3) he did not knowingly waive his right to testify at his stipulated facts trial. The Court will discuss each Claim below.

### A. Claim One: Ineffective Assistance of Counsel

In Claim One, Petitioner contends that suppression counsel and trial counsel were ineffective because they did not investigate his case and they did not interview witnesses who were present during the administrative search. He also contends that trial counsel: (1) did not offer any defense during the trial; (2) misled Petitioner about how a stipulated facts trial works, such that Petitioner thought he could testify during the trial to tell his version of events; and (3) failed to raise on direct appeal the issue of police involvement in the administrative search. The Delaware Supreme Court denied these arguments as meritless on post-conviction appeal. As a result,

Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Notably, a state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). **When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.**

5

*Richter*, 562 U.S. at 105 (emphasis added) (internal citations omitted). When assessing the reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect," and "*Strickland* [] calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 110. In turn, when assessing prejudice under *Strickland*, the question is whether it is reasonably likely the result would have been different but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 103.

In this case, the Delaware Supreme Court analyzed Petitioner's ineffective assistance of counsel allegations contained in Claim One pursuant to the *Strickland* framework. The Delaware Supreme Court's decision is not contrary to clearly established law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Additionally, the Delaware Supreme Court reasonably applied *Strickland* in denying Claim One. In the suppression motion, suppression counsel argued that all of the evidence seized during the administrative search should be suppressed because: (1) a police officer improperly participated

6

in the administrative search; and (2) McClure (the probation officer) did not complete a written pre-search checklist before conducting the administrative search. When viewed in context with record, suppression counsel's and trial counsel's failure to interview witnesses to the administrative search, and their failure to investigate the timing of the phone call between McClure and Allfather (his supervisor), amounted to reasonable strategic decisions. First, considering that the State conceded the issue of the police being involved in the actual search, and that the trial court suppressed a portion of the drug evidence as a result, both suppression and trial counsel reasonably determined that it was not necessary to interview and subpoena witnesses to support the argument regarding the improper police involvement. (D.I. 15-7 at 4) In turn, since the relevant issue for suppression purposes was McClure's failure to comply with the rules requiring him to fill out a written pre-search checklist for conducting probationary warrantless residential searches, and both parties concurred that his phone call with Allfather occurred prior to the administrative search, counsel reasonably focused on the substance of the authorizing telephone conversation between McClure and Allfather, rather than on the exact time of that phone call. (D.I. 15-7 at 45, ¶ 6)

As for trial counsel's failure to offer any defense during the trial, trial counsel's Rule 61 affidavit explains how he and Petitioner agreed that the suppression issue was the main issue in this case and that a stipulated facts trial would be more beneficial to Petitioner because they could then proceed with appealing the trial court's suppression motion decision. According to trial counsel, "[t]here was no need to interview potential witnesses or [engage] in other trial preparation because the trial would be passed solely on the stipulated material to which [Petitioner] agreed to." (D.I. 15-7 at 41) Petitioner has not shown how the testimony of any witnesses would have benefitted him. Petitioner also has not indicated what other trial preparation and/or defense he believes trial counsel

should have engaged in or how that would have benefitted him during the stipulated facts trial. Given these circumstances, Petitioner has failed to demonstrate prejudice under *Strickland*.

Given the foregoing record, the Court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* in denying this portion of Claim One.

Petitioner's remaining allegations concerning trial counsel are similarly unavailing. According to trial counsel's Rule 61 affidavit, he informed Petitioner about what it meant to proceed with a stipulated facts trial, including the part that testimony would not be permitted, and Petitioner voluntarily agreed to proceeding with a stipulated facts bench trial. Once Petitioner stipulated that he possessed cocaine with the intent to deliver it, the only item left for trial counsel was to appeal the denial of the suppression motion, which he did. *See Pendleton*, 990 A.2d at 418. Petitioner's unsupported and self-serving allegations fail to persuade the Court that the Delaware Supreme Court unreasonably applied *Strickland* in rejecting his allegation that trial counsel provided ineffective assistance.

Finally, although Petitioner contends that trial counsel should have raised on appeal the issue concerning the police officer participating in the administrative search, this issue had already been decided in Petitioner's favor during the suppression hearing. Petitioner does not explain how re-asserting this issue would have aided his direct appeal. Once again, Petitioner has failed to demonstrate prejudice under *Strickland*.

In short, when viewed through the doubly deferential lens applicable in this proceeding, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying Claim One. Accordingly, the Court will deny Claim One in its entirety.

## B. Claim Two: Illegal Administrative Search and Seizure

In Claim Two, Petitioner contends that the evidence against him was seized during an illegal warrantless search. The State properly argues that the Court is barred from considering the merits of this Fourth Amendment argument under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *See id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980); *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim – and, therefore, avoids the *Stone* bar -- if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, the record reveals that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. He filed a pre-trial motion to suppress the evidence obtained during the administrative search. The trial court conducted a hearing, and granted his motion in part, after which it suppressed the evidence seized by a police officer who participated in the search. The trial court also denied the motion in part and admitted the evidence seized by the probation officers

9

because it determined that the probation officers had conducted a proper administrative search. Petitioner challenged the partial granting of the suppression motion on direct appeal, and the Delaware Supreme Court affirmed the trial court's decision. Notably, even if the Superior Court's decision to deny his suppression motion in part was erroneous, Petitioner still had a "full and fair" opportunity to litigate his Fourth Amendment claim. *See, e.g., Marshall*, 307 F.3d at 82 (holding that "[a]n erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar."); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986).

Accordingly, the Court will deny Claim Two as barred by *Stone*.

### C. Claim Three: Right to Testify

In his final claim, Petitioner contends that he was unconstitutionally deprived of his right to testify because he did not voluntarily waive that right in a formal colloquy with the trial court. Petitioner presented this argument in his Rule 61 motion and on post-conviction appeal, and the Delaware Superior and Supreme Courts denied the argument as meritless. Therefore, Petitioner will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

Although every "criminal defendant is privileged to testify in his own defense or to refuse to do so," *Harris v. New York*, 401 U.S. 222, 225 (1971), there is no Supreme Court precedent requiring a trial court to conduct a formal colloquy with a defendant who chooses not to testify, or requiring a waiver of the right to testify to occur formally on the record. *See, e.g., Arredondo v. Huibregste*, 542 F.3d 1155, 1165 (7th Cir. 2008); *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir. 1995) ("[A] trial court has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily."). Given the absence of any Supreme Court precedent requiring a formal colloquy when a defendant chooses not to testify, the

10

Delaware Supreme Court's denial of Claim Three cannot be said to be contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)(1). *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("[B]ecause our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law.").

In addition, the Delaware Supreme Court's conclusion that Claim Three lacks merit was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Petitioner concedes that he voluntarily agreed to proceed with a stipulated facts trial (D.I. 15-6 at 13, Argument IV; D.I. 15-7 at 39), and the record contains a Stipulation of Facts signed by Petitioner, Trial Counsel, and the State (D.I. 15-7 at 54-55). The Stipulation recites all of the evidence admitted against Petitioner, including a DVD of his admissions to the police. (D.I. 15-4 at 6) The Stipulation also contains Petitioner's admission that, "based upon the evidence presented at his trial, including this Stipulation of Facts, the police report and [Petitioner's] DVD statement, there is sufficient evidence to find him guilty beyond a reasonable doubt of the offense of possession with the intent to deliver cocaine and tampering evidence." (D.I. 15-4 at 6-7)

When the Superior Court denied Claim Three in Petitioner's Rule 61 proceeding, it explained that Petitioner "presented this stipulation as [his] testimony." (D.I. 15-7 at 53) On post-conviction appeal, the Delaware Supreme Court explained that "the very purpose of the stipulation [Petitioner] signed was to obviate the need for live testimony," and "[i]t defies reason to believe under the circumstances that [Petitioner] believed he would be offering live testimony at the trial." *Pendleton*, 2012 WL 172839, at *2. Notably, Petitioner offers nothing to support his allegation that he did not knowingly agree to waive his right to testify when he knowingly and voluntarily agreed to

11

a stipulated facts trial. As such, the Court finds that the state court decisions denying Claim Three were based on reasonable factual determinations in light of the evidence before them.

Accordingly, the Court will deny Claim Three for failing to satisfy § 2254(d)(1) and (2).

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**. An appropriate Order will be entered.